Richard G. McCracken #2748
Andrew J. Kahn #3751
McCRACKEN, STEMERMAN, BOWEN & HOLSBERRY
1630 S. Commerce Street, Suite A-1
Las Vegas, Nevada 89102
(702) 386-5107

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF

CV-S-04-1124-LDG-PAL

LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS,

    Petitioner-Plaintiff,

v.

MARE-BEAR INC.; BOYD GAMING CORPORATION, DOES 1-20

    Respondents-Defendants

**PETITION AND COMPLAINT TO COMPEL LABOR ARBITRATION**

Comes now Petitioner-Plaintiff and alleges as follows:

1.    This Court has jurisdiction and venue over this action pursuant to the Federal Arbitration Act, 9 USC §1 et seq, and section 301 of the Labor Management Relations Act, 29 USC §185.

2.    Petitioner-Plaintiff Local Joint Executive Board (hereafter "the Union") is a labor organization as that term is defined in Section 2(5) of the Labor Management Relations Act, 29 U.S.C. §152(5), comprised of Culinary Workers Local 226 and Bartenders Local 165.

3.    Respondents-Defendants Mare-Bear Inc. ("Mare Bear") and Boyd Gaming Corporation ("Boyd Gaming") are employers within the meaning of Section 2(2) of the Labor Management Relations Act, 29 U.S.C. §152(2).

1

4. Defendants DOES 1-20 are any other persons or entities necessary to provide complete relief herein, whose identities are currently unknown to the Union. The Union will amend the complaint to specify such names as soon as identified.

5. The Union and Mare-Bear are signatory to a collective bargaining agreement covering the Stardust Hotel in Las Vegas and all other operations described in Article 28.01 of such agreement (hereafter "the Agreement").

6. True and correct copies of relevant provisions of the Agreement are attached hereto as Exhibit A. The Memorandum of Agreement concerning Article 28.01 (referred to hereafter as "the Neutrality Agreement") allows union organizers to have access to non-work areas and to employer records showing employees' names and addresses, requires managers to stay neutral about employees' decision to unionize, and provides for the Union to be granted recognition based upon proof of majority employee support through signed union authorization cards rather than through economic warfare or NLRB litigation. Upon proof of such support the rest of the Agreement is extended to such employees.

7. The Agreement mandates arbitration of any unresolved disputes over interpretation or application of the Agreement.

8. At the time the Agreement was negotiated, Boyd Gaming was the 100% parent of Defendant Mare-Bear, and continues to be so.

9. Officers of Boyd Gaming actively participated in the negotiations resulting in the Agreement.

10. The President of Mare-Bear is William Boyd, the principal shareholder and executive officer of Boyd Gaming. The Treasurer of Mare-Bear is Ellis Landau, who is an Executive Vice President of Boyd Gaming. The Secretary of Mare-Bear is Brian Larson, who is the General Counsel of Boyd Gaming.

11. Boyd Gaming falls within the definition of "Employer" within Article 28.01 of the Agreement.

2

12. Boyd Gaming is also bound by a duty to arbitrate under the Agreement.

13. On or about July, 2004, Boyd Gaming acquired the Sun Coast, Gold Coast and Orleans Hotel-Casinos (hereafter "Coast Hotels").

14. In July, 2004, the Union sent a letter to Defendants alleging that the Neutrality Agreement must be followed at the Coast Hotels.

15. Defendants dispute that the Agreement applies to the Coast Hotels.

16. The Union timely requested arbitration of this dispute, but Defendants refuse to arbitrate.

17. Defendants' refusal to arbitrate violates the Agreement.

18. Defendants' refusal to arbitrate is not substantially justified. Accordingly, Petitioner is entitled under Ninth Circuit law to recover its attorneys' fees herein.

WHEREFORE, the Union prays:

1. That Orders issue from this Court directing Defendants, and each of them, to promptly arbitrate the Union's grievance over Article 28.01 and the Neutrality Agreement with respect to the Coast Hotels.

2. For the Union's cost of suit herein.

3. For the Union's attorney's fees herein.

4. For such other and further relief as the Court deems just and proper.

Dated: August __11__, 2004     McCRACKEN, STEMERMAN, BOWEN & HOLSBERRY

By: _____
Richard McCracken
Andrew J. Kahn
Attorneys for Petitioner-Plaintiff

3

RECYCLED PAPER MADE FROM 30% POST CONSUMER CONTENT

# COLLECTIVE BARGAINING AGREEMENT

between

# MARE-BARE, INC.

dba

# STARDUST RESORT AND CASINO

and

# LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS

# 2002      2007

# AGREEMENT

THIS AGREEMENT is made and entered into as of the 1st day of June, 2002 by and between MARE-BEAR, INC. dba STARDUST RESORT AND CASINO, (hereinafter, called the "Employer") and its successors and assigns, and the LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS, for and on behalf of CULINARY WORKERS UNION, LOCAL NO. 226 and BARTENDERS UNION, LOCAL NO. 165 (hereinafter, called the "Union").

## WITNESSETH:

WHEREAS, pursuant to a valid reopening notice dated March 8, 2002, and served upon the Employer by the Union, the parties have, by negotiations and collective bargaining, reached complete agreement on wages, hours of work, working conditions and other related, negotiable subjects to be incorporated into a new Labor Agreement which shall supersede all previous verbal or written agreements in conflict with or modified by this Agreement applicable to the employees in the bargaining unit defined herein which may have existed between the Employer and the Union or between the predecessor of the Employer, if any, and the predecessor of the Union, if any.

NOW, THEREFORE, in consideration of the foregoing, the execution of this Agreement and the full and faithful performance of the covenants, representations and warranties contained herein, it is mutually agreed as follows:

## ARTICLE 1: RECOGNITION AND CONTRACT COVERAGES

### 1.01. Recognition of the Union.

The Employer recognizes the Union as the exclusive collective bargaining representative for the Employer's employees employed at its facility as indicated in the first paragraph of this agreement, and excluding any persons working for the Employer at any other facility, including those located in Clark County, Laughlin or Reno, Nevada or any subsequently acquired property not organized by the Union, working under the Union's jurisdiction and working in those job classifications listed in Exhibit 1, attached to and made a part of this Agreement. The Employer and the Union agree that all employees working in classifications listed in Exhibit 1 are properly within the bargaining unit. Any classification established by the Employer not listed in Exhibit 1, where all of the employees' duties are covered by this Agreement, shall be a part of this Agreement at a wage rate comparable to related job classifications.

### 1.02. Open and Excluded Classifications.

(a) The classifications set forth below are included in the bargaining unit, but their wage scales shall be open, and they shall be covered only by Articles 11, 14, 15, 25 and 26 of this Agreement and, where applicable, those provisions dealing with gratuities. The provisions of Article 21 may be invoked as to persons employed in such classifications solely for the purpose of processing grievances limited to disputes or differences involving the meaning, interpretation, and/or application of the Articles specified above. This shall not preclude the Union from filing grievances under other Articles for claimed violations of its rights.

## 27.03.

The Employer shall pay the following additional amounts as of the dates shown. At least 30 days prior to each date, the Union shall inform the Employer how the increases shall be allocated to wages for the various classifications listed in Exhibit 1 and contributions to the Health and Welfare, Pension and/or Training funds, provided that if the Union's notice to the Employer is less than 30 days, the Employer will not be excused from paying the increases as allocated by the Union unless there is actual prejudice to the Employer by the delay and then the Employer may be excused only for a period of time equal to the length of the Union's delay in giving notice. The Union shall make such allocation in its sole discretion. Any increases in wages shall be added to the rates shown in Exhibit 1 for the affected classifications.

| Date | Total Package Increase |
| --- | --- |
| June 1, 2003 | $0.60 per hour |
| June 1, 2004 | $0.65 per hour |
| June 1, 2005 | $0.65 per hour |
| June 1, 2006 | $0.65 per hour |

## 27.04.

NEW HIRES who have worked in the GREATER LAS VEGAS AREA CASINO INDUSTRY in a Culinary/Bartender classification a minimum of two thousand (2,000) hours in the thirty-six (36) month period preceding the commencement of their employment, may for the first ninety (90) calendar days of their employment be paid a rate equal to eighty percent (80%) of the full contract rate of pay for the employee's classification.

Thereafter they shall be paid a rate equal to one hundred percent (100%) of the full contract rate of pay for the employee's classification.

NEW HIRES who have not worked in the GREATER LAS VEGAS AREA CASINO INDUSTRY in a Culinary/Bartender classification a minimum of 2,000 hours in the thirty-six (36) month period preceding the commencement of their employment may be paid at the eighty percent (80%) rate for the first one hundred eighty (180) calendar days of employment.

The Employer shall advise the employee of his/her obligation to furnish the Employer, within ninety (90) calendar days, with verification of the two thousand (2,000) hours of prior Greater Las Vegas Casino Industry experience in a Culinary/Bartender classification on a form to be mutually agreed upon by the parties. An employee who produces such verification after ninety (90) calendar days but before one hundred and eighty (180) calendar days shall be increased to one hundred percent (100%) at that time, but not retroactively.

## ARTICLE 28: OWNERS AND SUCCESSORS

### 28.01. Ownership.

This Agreement shall cover all employees employed in classifications listed in Exhibit 1 in operations within the jurisdiction of the Union, in Greater Las Vegas, Nevada, which during the term of this Agreement, are owned by, or operated by or substantially under the control of the Employer. The term "Employer" shall be deemed to include any person, firm, partnership,

corporation, joint venture or other legal entity substantially under the control of the Employer covered by this Agreement, or one or more principal(s) of the Employer covered by this Agreement, or a subsidiary of the Employer covered by this Agreement, or any person, firm partnership, corporation, joint venture or other legal entity which substantially controls the Employer covered by this Agreement. However, the foregoing provisions of this Section shall not apply (1) to any employees employed in classifications listed in Exhibit 1 in hotel-type operations of sixty (60) rooms or less unless such operations have a casino providing live games, or (2) to any employees employed in classifications listed in Exhibit 1 in operations which do not have a casino providing live games unless such operations are hotel-type operations of more than sixty (60) rooms, or (3) to any employees employed in non-hotel operations, or (4) to California Hotel & Casino dba Sam's Town Hotel and Gambling Hall, and California Hotel & Casino dba California Hotel & Casino.

## 28.02. Obligations on Employer Selling or Assigning.

In the event that the Employer sells or assigns its business or in the event that there is a change in the form of ownership, the Employer shall give the Union reasonable advance notice thereof in writing and shall make all payments which are due or shall be due as of the date of transfer of the business for wages and health and welfare for employees covered by this Agreement. In addition, the Employer shall be responsible for accrued vacation payments for each employee covered by this Agreement. The Employer further agrees that as a condition to any such sale, assignment or transfer of ownership, the Employer will obtain from this successor or successors in interest a written assumption of this Agreement and furnish a copy thereof to the Union.

## 28.03. Obligations on Successor Employers.

This Agreement shall be binding upon the successors and assigns of the parties hereto. No provisions, terms or obligations herein contained shall be affected, modified, altered or changed in any respect whatsoever by the consolidation, merger, sale, transfer or assignment of the Employer's interest, or any part thereof, in any establishment covered by this Agreement.

# ARTICLE 29: SUBCONTRACTING AND SUBLEASING

## 29.01.

It is recognized that the Employer and the Union have a common interest in protecting work opportunities for all employees covered by this Agreement and employed on a regular basis. Therefore, no work customarily performed by employees covered by this Agreement shall be performed under any sublease, subcontract, or other agreement unless the terms of any lease, contract or other agreement specifically state that (a) all such work shall be performed only by members of the bargaining unit covered by this Agreement, and (b) the Employer shall at all times hold and exercise full control of the term and conditions of employment of all such employees pursuant to the terms of this Agreement. The provisions of this Article apply to all operations on the Employer's premises, regardless of location or displacement of employees or prior use of the area occupied by such operations. Any sublease, subcontract, or other agreement for the performance of cleaning or janitorial services shall first require the approval of the Union. Notwithstanding the foregoing provisions hereof, the Employer may purchase from outside sources for use in its establishment convenience foods, prepared frozen foods, pre-mixed salads and peeled vegetables.

## ARTICLE 33: TERMINATION

### 33.01.

This Agreement shall be in full force and effect from June 1, 2002, to and including May 31, 2007, and from year to year thereafter unless sixty (60) days written notice to change, modify or terminate is given by either party prior to June 1, 2007, or in any subsequent year thereafter.

IN WITNESS WHEREOF, the parties hereto by their duly designated representatives have hereunto set their hands this 11TH day of July, 2003, in Clark County, State of Nevada.

EMPLOYER - MARE-BEAR, INC.
dba STARDUST RESORT & CASINO

BY: _____

ITS: _Exec. U.P. & COO_

LOCAL JOINT EXECUTIVE BOARD
OF LAS VEGAS

BY: _____

ITS: __President__

BY: _____

ITS: __Secretary-Treasurer__

## MEMORANDUM OF AGREEMENT

THIS AGREEMENT is made and entered into by and between the MARE-BEAR, INC. dba STARDUST RESORT AND CASINO (hereinafter called the "Employer"), and the LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS, for and on behalf of the CULINARY WORKERS UNION, LOCAL NO. 226, and BARTENDERS UNION, LOCAL NO. 165 (hereinafter called the "Union"), and is hereby attached to and made a part of the Collective Bargaining Agreement(s) between those parties.

The parties hereby establish the following procedure for the purpose of ensuring an orderly environment for the exercise by the Employer's employees of their rights under Section 7 of the National Labor Relations Act and to avoid picketing and/or other economic action directed at the Employer in the event the Union decides to conduct an organizing campaign at any operation (at which the Union does not have representation rights) covered by Section 28.01 of the above referenced agreement between the parties among employees employed in classifications listed in Exhibit 1 of such agreements.

The parties mutually recognize that national labor law guarantees employees the right to form or select any labor organization to act as the employees' exclusive bargaining representative for the purpose of collective bargaining with the Employer, or to refrain from such activity.

The Employer will take a positive approach to unionization of employees employed in classifications listed in Exhibit 1 of the agreements between the parties. It will advise such employees that it welcomes their selection of a collective bargaining agent. The Employer will not do any action nor make any statement that will directly or indirectly state or imply any opposition by the Employer to the selection by such employees of a collective bargaining agent, or preference for or opposition to any particular union as a bargaining agent.

The Union and its representatives will not coerce or threaten any employee of the Employer in an effort to obtain authorization cards.

If the Union provides written notice to the Employer of its intent to organize employees employed in classifications listed in Exhibit 1 of the agreements between the parties, the Employer shall not interfere with access on its premises to such employees by the Union to the extent such access is permitted by the Employer's lawful solicitation rules.

Within ten (10) days following receipt of such written notice of intent to organize employees employed in classifications listed in Exhibit 1 of the agreements between the parties, the Employer will furnish the Union with a complete list of such employees, including both full and part-time employees employed in classifications listed in Exhibit 1 of the agreements between the parties, showing their job classifications and departments. Within two (2) weeks thereafter, the Employer will furnish a second list of such employees to the Union, including the addresses of all employees unless an employee objects in writing to the disclosures of his or her name. Thereafter, the Employer will provide updated lists monthly.

The Union may request recognition as the exclusive collective bargaining agent for the employees in the traditional bargaining unit represented by the Union in the hotel-casino industry in Las Vegas. A disinterested, neutral party mutually satisfactory to the Employer and the Union will be selected to conduct a review of employees authorization cards and membership information submitted by the Union in support of its claim to represent a majority of the employees in the unit. If a majority of employees within the unit has joined the Union or designated it as their exclusive collective bargaining representative, the Employer will recognize the Union as such representative of the employees and will extend to such employees this collective bargaining agreement between the Union and the Employer together with any amendments agreed to by the parties. The Employer will not file a petition with the National Labor Relations Board for any election in connection with any demands for recognition provided for in this agreement.

During the life of this Agreement, the Union will not engage in picketing or other economic activity at any operation covered by this Section, provided that if the Employer recognizes any union as the exclusive collective bargaining representative of employees in the unit, or any part thereof, traditionally represented by the Union, this paragraph shall terminate immediately and without notice.

The parties agree that any disputes over the interpretation or application of this Section shall be submitted to expedited arbitration with Gerald McKay of Hillsborough, California, or any other mutually acceptable person, as the arbitrator. The arbitrator shall have the authority to order the non-compliant party to comply with this Section. The parties hereto consent to the entry of any order of the arbitrator as the order or judgment of the United States District Court for the District of Nevada, without notice or entry of findings of fact and conclusions of law.

IN WITNESS WHEREOF, the parties hereto by their duly designated representatives have hereunto set their hands this 11TH day of July, 2003, in Clark County, State of Nevada.

EMPLOYER - MARE-BEAR, INC.
dba STARDUST RESORT & CASINO

BY: _____

ITS: Exec. U.P. & COO

LOCAL JOINT EXECUTIVE BOARD
OF LAS VEGAS

BY: _____

ITS: President

BY: _____

ITS: Secretary-Treasurer

## MEMORANDUM OF AGREEMENT

THIS MEMORANDUM OF AGREEMENT is entered into by and between the MARE-BEAR, INC. dba STARDUST RESORT AND CASINO (hereinafter, called the "Employer"), and the LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS, for and on behalf of the CULINARY WORKERS UNION, LOCAL NO. 226, and BARTENDERS UNION, LOCAL NO. 165 (hereinafter, called the "Union"), and shall constitute an amendment to the collective bargaining agreement between the Employer and the Union.

The Employer and the Union agree as follows:

1. In the event the Employer is obligated to recognize the Union as the exclusive bargaining representative of employees then employed by the hotel and/or casino located at 300 North Main Street under the terms of Article 28 - Owners and Successors and the Memorandum of Agreement to the Stardust Agreement, commonly referred to as the "neutrality agreement", the collective bargaining agreement to be extended to such employees shall be the collective bargaining agreement between Sam-Will, Inc. dba Fremont Hotel & Casino and the Union (the Fremont Agreement) together with any amendments to that agreement agreed to between the Union and the Employer, rather than the collective bargaining agreement between Mare-Bear, Inc. dba Stardust Resort and Casino and the Union.

2. The Union, at the request of the Employer, agrees to meet and discuss with the Employer any amendments to the Fremont Agreement proposed by the Employer to be applicable to the represented employees of the hotel/casino located at 300 North Main Street.

DATED: **July 11, 2003**

AGREED:

| EMPLOYER - MARE-BEAR, INC. dba STARDUST RESORT & CASINO | LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS |
|---|---|
| BY: _[signature]_ | BY: _[signature]_ |
| ITS: _Exec. U.P. & COO_ | ITS: President |
| | BY: _[signature]_ |
| | ITS: Secretary-Treasurer |